COURT OF APPEALS
DECISION
DATED AND FILED

September 18, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1118-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF45

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JESSE L.A. SCHULTZ,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Fond du Lac County: ANDREW J. CHRISTENSON, Judge. *Affirmed*.

        Before Gundrum, P.J., Neubauer and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jesse L.A. Schultz appeals a judgment convicting him of first-degree reckless homicide with use of a dangerous weapon. Shultz argues: (1) the circuit court erred by requiring him to appear by telephone at the evidentiary hearing on his motion to suppress; and (2) he was "in custody" for *Miranda*[1] purposes during his first interrogation on November 10, 2017, so the court should have suppressed statements and evidence obtained from him during that interrogation. We reject these arguments and, therefore, we affirm.

¶2 On September 23, 2017, Schultz and his co-defendant, Devon Neuman, shot and killed Logan Foster outside the Press Box Tavern in Fond du Lac. On November 10, 2017, the police interviewed Schultz about the shooting at the Fond du Lac County Jail, where Schultz was being held on an unrelated sentence. They did not give Schultz *Miranda* warnings because they believed him to be a witness, not a suspect. During these interviews, Schultz made several incriminating statements, including admitting that he was present at the scene. The next day, the police again interviewed Schultz. This time, the police gave Schultz *Miranda* warnings before the interview.

¶3 Schultz moved to suppress the statements he made during these interviews, arguing that his *Miranda* rights were violated and that evidence obtained through subsequent search warrants for his residence, phone, and Facebook account should be excluded. The circuit court denied Schultz's motion to suppress the November 10, 2017 statements and the evidence obtained from the search warrants, ruling that Schultz was not "in custody" for purposes of *Miranda* during the first interview and ruling that the search warrants were supported by

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

probable cause. However, the court granted the motion to suppress statements Schultz made during the November 11, 2017 interview, determining that Schultz's *Miranda* rights had been violated when detectives continued to question him after he requested an attorney. Following these rulings, Schultz pleaded guilty to a reduced charge of first-degree reckless homicide.

¶4     Schultz first argues that the circuit court erred by requiring him to appear by telephone at the evidentiary hearing on his motion to suppress on July 13, 2020. During this time, a Wisconsin Supreme Court order was in effect due to the COVID-19 pandemic. In re the Matter of Remote Hearings During the COVID-19 Pandemic (S. Ct. Order issued March 22, 2020; amended April 15, 2020).[2] The order provided that "all in-person proceedings in all appellate and circuit courts are hereby suspended until further order of this court." *Id.* at 1. The order provided that exceptions would be made "if remote technology is not practicable or adequate to address" certain "[p]roceedings necessary to protect the constitutional rights of criminal defendants." *See id.* at 2.

¶5     Schultz argues that his physical presence was necessary in the courtroom for the fair adjudication of his motion to suppress. He contends that his ability to communicate effectively with his attorney was significantly compromised by the remote appearance. However, the record and Schultz's own admissions in his appellant brief belie these claims. Schultz was permitted to communicate confidentially with his attorney when he asked to do so. The circuit court provided them a private channel through which to speak. Schultz does not

---

[2] https://www.wicourts.gov/news/docs/remotehearingsamended.pdf (last visited Sept. 9, 2024).

offer any specific examples or arguments to demonstrate that his remote appearance hindered his defense or affected the outcome of the hearing. Schultz has not shown that the remote technology the court used was not adequate to address the motion to suppress in a manner consistent with the protection of Schultz's constitutional rights. Therefore, we reject his argument that the court erred in requiring him to appear remotely for the hearing.

¶6 Shultz next argues that his *Miranda* rights were violated during his November 10, 2017 interview with law enforcement while he was incarcerated at the Fond du Lac County Jail on unrelated charges. Schultz contends that he was effectively "in custody" during the interview and, as such, should have been provided with *Miranda* warnings prior to any questioning. He argues that being questioned about a homicide in the jail environment would lead any reasonable person to believe they were not free to terminate the conversation and leave.

¶7 In determining whether a person is in custody for *Miranda* purposes, courts apply an objective test: whether, under the totality of the circumstances, a reasonable person would have felt they were not free to terminate the interrogation and leave. *State v. Bartelt*, 2018 WI 16, ¶31, 379 Wis. 2d 588, 906 N.W.2d 684. The United States Supreme Court has emphasized that "custody" for *Miranda* purposes is not defined by mere physical incarceration but by whether the interrogation environment presents inherently coercive pressures. *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). We will uphold the factual findings made by the circuit court unless they are clearly erroneous but the ultimate question of whether a defendant was in custody for the purposes of *Miranda*, based on the facts, is a question of law that we review independently. *See State v. Dobbs*, 2020 WI 64, ¶28, 392 Wis. 2d 505, 945 N.W.2d 609.

4

¶8     While it is undisputed that Schultz was in jail at the time of the interview, case law teaches that incarceration alone does not automatically mean that a person is in custody for purposes of *Miranda*.  The critical inquiry is whether a reasonable person in Schultz's position would have felt free to terminate the interview and leave.  After the evidentiary hearings on the suppression motion, the circuit court made the following factual findings with regard to the November 10, 2017 interview.  The court found that the officers did not escort Schultz down to the conference room.  He was simply asked or told to go there.  The conference room door was not locked and Schultz was not physically restrained.  The police initially thought Schultz was a potential witness, not a suspect, and the questions they asked him were the type of questions the police would ask a witness, not a suspect.  Based on the eighteen minute recording of the interview, which was played during the hearing, the court characterized the tone of the interview as not threatening or angry, and noted that the officers were not speaking loudly.  Based on the court's factual findings—which indicate a non-coercive environment and lack of physical restraint—and the legal standards in *Howes* and *Bartelt*, we conclude that the police questioning of Schultz on November 10 did not present the inherently coercive pressures that would necessitate *Miranda* warnings.  As such, Schultz was not in custody for *Miranda* purposes during the November 10 interview, and the court properly denied his motion to suppress the evidence that was obtained based on the interview.

       *By the Court.*—Judgment affirmed.

       This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.